## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**Tammie W. Burley**                                                                            **Plaintiff**

**v.**                                              **No. 5:15-CV–109-JM-PSH**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                            **Defendant**

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge

James M. Moody, Jr.  A party to this dispute may file written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  The objecting party must

serve the opposing party with a copy of an objection.  Failing to object within 14 days

waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Moody

may adopt the recommended disposition without independently reviewing all of the

record evidence.

———————————————

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Tammie W. Burley seeks judicial review of the denial of her second application for social security disability benefits.[3]  Burley claims she has been disabled since June 2009, when she left her job at a shoe factory.[4]  Her reasons for leaving her job vary.[5]  Burley based disability on anxiety attacks, high blood pressure, attention deficit hyperactivity disorder, obesity, and chronic leg, neck, and back pain.[6]

**The Commissioner's decision**.  After considering the application, the ALJ identified morbid obesity, osteoarthritis, diabetes mellitus, right hand/arm disorder with pain, depressive disorder, and anxiety-related disorder as severe impairments.[7]  The ALJ determined Burley can do some unskilled sedentary work.[8]  After a vocational expert identified available unskilled sedentary work, the ALJ concluded that Burley is

---

[3]SSA record at p. 202 & 204 (applying on Jan. 5 & 6, 2012 and alleging disability beginning June 30, 2009).  *See id*. at p. 215 (indicating that prior claim was denied on Mar. 14, 2003).  Burley received benefits as a child based on the death of a parent.

[4]*Id*. at p. 101 & 234.

[5]*Id*. at p. 102 (her manager said it was best not to return to work because of high blood pressure), p. 219 (she was let go because she couldn't do her duties and there wasn't enough work), p. 241 (she hasn't worked due to high blood pressure) & p. 279 (she quit because her supervisor wouldn't let her stay home to care for an ill child).

[6]*Id*. at p. 219.

[7]*Id*. at p. 82.

[8]*Id*. at p. 84.

not disabled and denied the application.[9]

After the Appeals Council denied review,[10] the ALJ's decision became the

Commissioner's final decision for the purpose of judicial review.[11]  Burley filed this case

to challenge the decision.[12]  The recommended disposition explains why the court

should affirm the decision.

**Burley's allegations**.  Burley complains because the ALJ failed to discuss her

mental health treatment records.  She suggests the ALJ failed to explain why the

medical evidence doesn't support her claim.  She maintains her primary care

physician's (PCP) medical statement deserved more weight.  She contends these issues

led to an overstatement of her ability to work and to an erroneous conclusion that work

exists that she can do.  She says substantial evidence does not support the decision.[13]

**Applicable legal principles**.  When reviewing a decision denying an application

for disability benefits, the court must determine whether substantial evidence supports

---

[9]*Id*. at p. 90.

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]Docket entry # 12.

the decision and whether the ALJ made a legal error.[14]  For substantial evidence to exist,

a reasonable mind must accept the evidence as adequate to support the determination

that Burley can do some unskilled sedentary work and that work exists that she can

do.[15]

Sedentary work "involves lifting no more than 10 pounds at a time and occasionally

lifting or carrying articles like docket files, ledgers, and small tools."[16]  The ALJ placed

the following limitations on sedentary work:

> (1) no climbing ladders, ropes, or scaffolds;
>
> (2) occasional stair-climbing, balancing, stooping, kneeling, crouching, and crawling;
>
> (3) no unprotected heights or excessive heat;
>
> (4) frequent fingering and handling;
>
> (5) a sit/stand option;

---

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[15]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) (substantial evidence exists if a reasonable mind will accept evidence as adequate to support conclusion).

[16]20 C.F.R. §§ 404.1567(a) & 416.967(a).

4

(6) occasional changes in workplace setting;

(7) incidental interpersonal contact;

(8) tasks with few variables, learned and performed by rote,

(9) little required judgment; and

(10) simple, direct, concrete supervision.[17]

For the following reasons, a reasonable mind will accept the evidence as adequate to

show Burley can work with these limitations:

   1.  **The record establishes no very serious functional limitation
   preventing sedentary work**.  Sedentary work "represents a significantly
   restricted range of work.  Individuals who are limited to no more than
   sedentary work by their medical impairments have very serious
   functional limitations."[18]

   In the year before applying for disability benefits, Burley sought fairly
   regular medical treatment.  She complained about anxiety and chronic
   back/leg pain.[19]  After a fall, she complained about shoulder/arm pain.[20]
   Treatment consisted of medication.

   Ten weeks after applying for disability benefits, Burley underwent an
   agency physical examination.[21]  The examiner reported moderate

---

[17]SSA record at p. 84.

[18]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do
Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of
Sedentary Work*.

[19]SSA record at pp. 331-34.

[20]*Id*. at p. 334.

[21]*Id*. at p. 308.

limitations,[22] but identified no serious functional limitation preventing sedentary work.  Burley demonstrated the ability to use her fingers and hands.[23]  The ability to use the fingers and hands is probative of Burley's claim because unskilled sedentary work usually requires the use of the fingers and hands.

Later treatment records document visits for medication refills, management of diabetes and high blood pressure, efforts for weight loss, and complaints of stress and anxiety.[24]  The ALJ correctly recognized that the record lacks "the type and quantity of objective, verifiable clinical evidence necessary" to demonstrate disability.[25]

2.  **The ALJ accounted for nonexertional limitations by requiring a reduced range of sedentary work**.  Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.[26]  The ALJ's requirements account for nonexertional limitations.

"Obesity is also a nonexertional impairment which might significantly restrict a claimant's ability to perform the full range of sedentary work."[27]  The physical examiner and treating physicians identified obesity as a limitation.  Burley consistently complained about back and leg pain.  Obesity can produce such symptoms.  The symptoms can limit "exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and

---

[22]*Id*. at p. 312.

[23]*Id*. at p. 311.

[24]*Id*. at pp. 325-29 & 366-69.

[25]*Id*. at p. 86.

[26]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[27]*Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997).

pulling," and the "ability to do postural functions, such as climbing, balanc[ing], stooping, and crouching."[28]

The reduction to sedentary work, and the exclusion of work involving heat, respond to obesity.  The exclusion of work involving ladders, ropes, scaffolds, unprotected heights; the limitation on stair-climbing, balancing, stooping, kneeling, crouching, and crawling; and the need for a sit/stand option, respond to complaints of back and leg pain.  The requirement for frequent, versus constant, fingering and handling responds to right hand/arm disorder.[29]  The other limitations — occasional changes in workplace setting, incidental interpersonal contact, tasks with few variables learned and performed by rote, little required judgment, and simple, direct, concrete supervision— respond to mental impairment.

Burley suggests the mental requirements fail to account for mental impairment because the ALJ failed to discuss her mental health records. This is important, she says, because the ALJ incorrectly stated that she has had no on-going mental health treatment and that her treatment has primarily consisted of medications prescribed by her PCP.  Although the ALJ did not discuss Burley's mental health records, "an ALJ is not required to discuss every piece of evidence submitted."[30]  The decision suggests the ALJ may have been unaware that Burley sought mental health treatment, but there's no indication the result would have been

---

[28]SSR 02-1p, Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Obesity, ¶ 8.

[29]The ALJ didn't identify evidence supporting a right hand/arm disorder.  The record contains a complaint of left shoulder/arm pain following a remote fall, SSA record at p. 334, but Burley demonstrated no problems with her hands, fingers or arms during the agency physical exam, *id*. at p. 311.  The record provides no basis for a right hand/arm disorder.

[30]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).  See *also Wheeler v. Apfel*, 224 F.3d 891, 896 n.3 (8th Cir. 2000) ("That the ALJ did not attempt to describe the entirety of [claimant's] medical history does not support [claimant's] argument that the ALJ disregarded certain aspects of the record.").

different if he had.[31]

Burley claims to have been disabled since June 2009, but she sought no professional mental health treatment until December 6, 2012.[32]  Thus, for most of the time during the time period for which benefits were denied — 41 of 52 months — Burley sought no professional mental heath treatment. By the time of the decision, Burley obtained mental health medications from a mental health professional and had attended a few individual psychotherapy sessions.  Treatment notes show Burley experienced situational stress flowing from marital discord and rearing five small children.[33]  Importantly, treatment notes show treatment controlled Burley's symptoms.[34]  Symptoms controlled by treatment are not considered disabling under social security law.[35]

According to agency mental health experts, Burley can work within the

---

[31]To show harmful error, the claimant "must provide some indication that the ALJ would have decided differently if the error had not occurred."  *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012).

[32]SSA record at p. 348 (intake interview).

[33]*Id*. at p. 348 (Dec. 6, 2012, I'm here because I went through a rocky marriage, my husband was very abusive), p. 353 (Jan. 9, 2013, she says her children aggravate her, she has little control over the children in the office today), p. 358 (Jan. 18, 2013, she continues to report verbal abuse from husband, she says she would be happier if he moved out), p. 359 (Feb. 28, 2013, she's frustrated over current living situation, she's forming a plan to ask husband to leave the home) & pp. 374-75 (May 9, 2013, she doesn't want her mother in her or her children's lives, she's putting things in order for husband to leave, she's decided to allow husband to be in children's lives).

[34]*Id*. at p. 361 (doing well on medications, a few problems but she is making it, anxiety comes and goes), p. 370 (medication has helped with anxiety and depression) & p. 401 (decrease in anxiety due to medication change, stressed over costs associated with children's return to school, coping strategies working for the most part).

[35]*Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

ALJ's parameters.[36]  Even if the ALJ was unaware that Burley sought professional mental health treatment, no harm occurred because treatment controls mental symptoms.  A reasonable mind will accept the evidence as adequate because the ALJ's mental limitations account for residual mental symptoms.

3.  **The ALJ properly considered the PCP medical statement**.  The ALJ must consider all credible evidence, to include medical opinion evidence, when considering whether a claimant is disabled.[37]  The Commissioner's rules instruct the ALJ to give a treating physician's medical opinion controlling weight if it is well- supported and consistent with the other substantial evidence.[38]

Burley's PCP prepared a statement reporting symptoms that, if fully credited, are disabling.[39]  The ALJ incorporated several reported limitations in determining Burley's ability to work, but rejected other reported limitations because the statement doesn't necessarily support disability, the PCP had seen Burley three times, the PCP appeared to accept subjective allegations at face value, and the PCP didn't take into account all factors an ALJ must consider.[40]  These are good reasons if supported by the record.

The record supports the ALJ's reasons.  The regulations favor treating-physician opinions, in part, because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)…."[41]  For this reason, the

---

[36]SSA record at pp. 292 & 346.

[37]20 C.F.R. §§ 404.1527 & 416.927.

[38]SSR 96-2p, *Pol'y Interpretation Ruling Titles II & XVI, Giving Controlling Weight to Treating Source Med. Opinions*.

[39]SSA record at p. 376.

[40]*Id*. at p. 89.

[41]20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).

length of the treatment relationship and the frequency of examination are important considerations in weighing a treating-physician opinion.[42]  In general, the longer the physician has treated the claimant, and the more times the physician has seen the claimant, the more weight the opinion deserves.[43]

The evidence before the ALJ showed the PCP saw Burley four times in 10 weeks.[44]  Treatment notes indicate the primary purpose of visits was medication refills.  The most probative aspect of the treatment notes is the absence of detail.  The notes document weight, blood pressure, pulse, blood oxygen saturation level, and diagnoses.  These facts do not provide the type of detailed, longitudinal picture that deserves controlling weight.

Instead of controlling weight, the ALJ assigned weight consistent with the record as a whole.  In describing the impact of obesity, the PCP described Burley as "too fat to walk" and "too fat to be in the heat."[45]  He indicated Burley can sit for six hours in an eight-hour workday, but needs to shift position at will.[28]  The requirement for sedentary work, the exclusion of work involving excessive heat, and the requirement for a sit/stand option, show the ALJ credited those limitations.  The limitations, however, do not equate to disability, unless a claimant has a limitation that precludes sedentary work.

The PCP reported such limitations.  According to the PCP statement, Burley can use her hands, fingers, and arms for 30% of an eight-hour workday.  The reduction to frequent fingering and handling shows the ALJ discredited the limitation.  The question for the court is whether

---

[42]*Id.*

[43]*Id.*

[44]SSA record at pp. 366-68.  After the decision, Burley submitted new evidence indicating the PCP saw Burley more than four times, *id*. at pp. 382-91, but those records document no disabling symptoms.

[45]*Id.* at pp. 376 & 379.

[28]*Id.* at p. 377.

substantial evidence supports the determination.

The evidence contains substantial evidence.  When Burley applied for disability benefits, she reported no limitations with the hands, fingers, and arms.[29]  Treatment notes document no complaints about the hands, fingers, or arms.  Burley demonstrated the use of the hands, fingers, and arms during the agency physical exam.[30]  In the absence of medical evidence documenting problems with the hands, fingers, or arms, the only basis for the reported limitation is acceptance of subjective allegation at face value.

The reported limitations suggest Burley can do no physical activity, yet the PCP encouraged Burley to exercise.[31]  Recommending exercise indicates Burley can do more than reported.[32]  The ALJ had a sufficient basis for giving the statement less than controlling weight.

4.  **Vocational evidence supports the decision.**  After determining Burley can no longer do her past work, the ALJ questioned a vocational expert about available work.  The vocational expert identified document preparer and charge account clerk as representative available work.[33]  The availability of representative jobs shows work exists that Burley can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[34]  Because such work exists, Burley isn't disabled under social security law.

––––––––––––––––––––––

[29]*Id*. at p. 249.

[30]*Id*. at pp. 310-11.

[31]*Id*. at p. 366.

[32]*Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) ("In the absence of other evidence in the record, a physician's unrestricted recommendations to increase physical exercise are inconsistent with a claim of physical limitations.").

[33]SSA record at p 129.

[34]42 U.S.C. § 1382c(a)(3)(B).

**Conclusion and Recommended Disposition**

Substantial evidence supports the ALJ's decision because a reasonable mind will accept the evidence as adequate to support the decision.  Burley's impairments do not prevent some unskilled, sedentary work.  The ALJ made no reversible legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Burley's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 22nd day of February, 2016.

_____

United States Magistrate Judge